BODINE SEWER, INC., Plaintiff-Appellee, v. EASTERN ILLINOIS PRE-
CAST, INC., Defendant-Appellant.

Fourth District   No. 4—85—0688

Opinion filed May 21, 1986.

William A. Sunderman, of Brainard, Bower & Kramer, of Charleston, for appellant.

Rosenberg, Rosenberg, Bickes, Johnson & Richardson, Chartered, of Decatur (Jeffrey D. Richardson, of counsel), for appellee.

JUSTICE WEBBER delivered the opinion of the court:

The plaintiff-counterdefendant Bodine Sewer, Inc. (Bodine), filed suit against defendant-counterplaintiff Eastern Illinois Precast, Inc. (Eastern), in the Macon County circuit court requesting damages on the basis of alleged breaches of the implied warranties of fitness for a

particular purpose (Ill. Rev. Stat. 1983, ch. 26, par. 2—315) and merchantability (Ill. Rev. Stat. 1983, ch. 26, par. 2—314), as well as alleged breaches of express warranty. The breaches of warranty were alleged to have occurred with respect to concrete pipe which Eastern provided Bodine for use on a sewer construction project in the city of Decatur, for which Bodine was the contractor.

In its counterclaim, Eastern sought to recover amounts allegedly owed Eastern by Bodine for materials which Eastern delivered for use on the Decatur sewer construction project. An amended version of Eastern's counterclaim alleged, *inter alia,* that Bodine had agreed to pay for materials supplied by Eastern in conformance with Eastern's "Standard Conditions of Sale" contained in Eastern's quotation forms. In affirmative defenses filed with its answer to Eastern's counterclaim, Bodine alleged that no one signed Eastern's quotation forms on Bodine's behalf so as to subject Bodine to Eastern's "Standard Conditions of Sale."

Because of the nature of the issues presented for review, a detailed recitation of all of the evidence presented at the bench trial of this cause is not necessary; those facts pertinent to each issue will be stated in the relevant portions of this opinion.

Following the submission of trial briefs by both parties, the circuit court found that Bodine was not bound by the "Standard Conditions of Sale" contained in Eastern's quotation forms because it did not execute the quotation forms; that even if the "Standard Conditions of Sale" were a part of the parties' contract, a purported disclaimer of warranties contained therein was ineffectual due to its inconspicuousness; that an "express warranty for a particular purpose" existed and Eastern breached that warranty; that Bodine rightfully refused continued deliveries from Eastern; and that Bodine was required to expend additional amounts to cover the cost of substitute materials. On this basis, the court entered judgment on Bodine's claim in the amount of $24,868.15 and entered judgment in the amount of $76,097.14 on Eastern's counterclaim. Only the judgment entered with respect to Bodine's claim is at issue in this appeal; Bodine has not cross-appealed from the judgment entered on Eastern's counterclaim.

■ Eastern first asserts that there is no evidence that it delivered damaged or defective pipe to Bodine. In the same section of its brief, Eastern states that, "[a]cceptance of the product is a waiver of any claims," citing section 2—607 of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1983, ch. 26, par. 2—607), *Frank's Maintenance & Engineering, Inc. v. C. A. Roberts Co.* (1980), 86 Ill. App. 3d 980,

408 N.E.2d 403, and *Ozite Corp. v. F. C. Clothier & Sons Corp.* (1970), 130 Ill. App. 2d 716, 264 N.E.2d 833.

Considering the last proposition first, there is nothing in section 2—607 (Ill. Rev. Stat. 1983, ch. 26, par. 2—607), *Frank's Maintenance*, or *Ozite* which supports the quoted statement. In fact, the court in *Frank's Maintenance* explicitly stated that, "acceptance of the goods does not of itself preclude a suit for breach of warranty." *Frank's Maintenance & Engineering, Inc. v. C. A. Roberts Co.* (1980), 86 Ill. App. 3d 980, 985, 408 N.E.2d 403, 406.

We also find no merit in Eastern's contention that Bodine did not establish that Eastern delivered damaged or defective pipe to Bodine's Decatur job site. All save four of the witnesses were employees or officers of one or the other of the parties. Of the nonpartisan witnesses, Leslie P. Jenkins, an engineering technician who was the city of Decatur's agent with respect to the sewer project, may perhaps be regarded as the witness with the least personal interest in the outcome of this litigation. Jenkins testified that although the city of Decatur's specifications called for pipe which was at least four days old before being loaded for delivery, most of the pipe furnished by Eastern was three days old when delivered. While at the job site, Jenkins on numerous occasions observed Eastern drivers break or crack concrete pipe while it was being unloaded. He observed pipe roll off of the trucks and hit curbs, thereby breaking the pipe's spigots, and he observed the arrival of seven pipes which were "breaking as they were coming off of the truck." Also, Jenkins had occasion to stand on a piece of 48-inch pipe after it had been unloaded by Eastern, and the spigot end broke off under his weight. (Jenkins weighs 210 pounds.) Additionally, Jenkins observed misalignment in 30-inch and 48-inch pipe delivered by Eastern. With respect to a final defective delivery of pipe on August 24, 1984, Jenkins testified that upon inspecting it, he discovered that pieces of the pipe could be removed with one's hand. In Jenkins' view, Eastern employees did not handle the pipe in a rough or abusive manner.

Corroborating Jenkins' testimony is that of Milton Sees, executive director of the Illinois Concrete Pipe Association, who testified on behalf of Eastern. Sees stated that an individual of Jenkins' weight standing on class III pipe (the lowest grade of 48-inch pipe which Bodine ordered from Eastern for use on the project) would not normally cause the pipe to break if it were of minimum strength. If pipe would break in that manner, or if one could pull it apart with his hands, that would indicate a problem with the pipe.

The third witness with no direct ties to either of the parties was

Gerald R. Broom, vice-president and general manager of the Egyptian Concrete Company, which was one of Bodine's suppliers of concrete pipe for the Decatur sewer project after Bodine refused further deliveries from Eastern. Broom testified that Egyptian generally does not ship concrete pipe which is less than four days old, and that concrete pipe is generally required to meet the minimum strength requirements upon delivery. Although Broom would have been able to "live with" some of the pipe manufactured by Eastern which was chipped around its bell end, which he saw at the Decatur job site, he would probably have raised objections to concrete pipe which was in that condition.

The final witness not directly connected with any of the parties was J. William Cobberly, an associate of the Decatur consulting firm of Shaffer, Krimmel, Silver & Associates, Inc. At the request of Bodine, Cobberly tested concrete from some of the concrete pipes delivered by Eastern to Bodine's Decatur job site. All except one of the samples fulfilled minimum strength requirements. Cobberly acknowledged, however, that the test which he utilized is not specifically designed for concrete pipe, although such a test is available.

In sum, the testimony of those witnesses with few direct ties to either of the parties, considered as a whole, tends to support Bodine's contention that Eastern delivered defective concrete pipe for use on the Decatur sewer project, although the testimony of the officers and employees of the two parties generally supports the parties' respective positions with regard to this matter. Giving due regard to the role of the trier of fact as the sole judge of the credibility of witnesses (*Kavale v. Morton Salt Co.* (1928), 329 Ill. 445, 160 N.E. 752; *In re Marriage of Ligas* (1982), 110 Ill. App. 3d 1, 441 N.E.2d 1277), we cannot say that under the circumstances here present, the trial court's implicit finding that Eastern delivered defective concrete pipe to Bodine is clearly contrary to the manifest weight of the evidence. *Woolley v. Hafner's Wagon Wheel, Inc.* (1961), 22 Ill. 2d 413, 176 N.E.2d 757.

■ Eastern also asserts that Bodine was bound by the terms of Eastern's "Standard Conditions of Sale," which contain a disclaimer of all warranties as to materials sold by Eastern. Michael L. Erickson, Eastern's president, testified that Eastern's "Standard Conditions of Sale" appear on the reverse side of all of Eastern's quotation forms. There is some dispute as to whether a Bodine official signed one of Eastern's quotation forms on which materials ordered for the Decatur sewer project were listed and thus subjected Bodine to Eastern's "Standard Conditions of Sale" with respect to such materials. We

need not, however, concern ourselves with this factual dispute, for we conclude that even if a quotation form containing Eastern's "Standard Conditions of Sale" was executed by a Bodine official, the purported disclaimer of warranties contained in the conditions of sale must fail due to its inconspicuousness.

Subsection 2—316(2) of the UCC (Ill. Rev. Stat. 1983, ch. 26, par. 2—316(2)) provides that in order for a disclaimer of warranties to be effective, it must be in writing and must be conspicuous. In the present case, Eastern's quotation forms contain on their face, in the smallest type utilized on that side of the quotation forms, a statement that "[t]his proposal" is subject to the "Standard Conditions of Sale" on the reverse side thereof. The portion of the "Standard Conditions of Sale" relating to disclaimer of warranties is printed only partially in capital letters, and those capital letters are the same size as capital letters appearing in other portions of the "Standard Conditions of Sale" on the reverse side of the quotation forms. Under these circumstances, Bodine may reasonably have concluded that the quotation forms were little more than statements of prices for the materials required for construction of the Decatur sewer project. Certainly there was nothing on the face of the quotation forms which would have specifically directed Bodine's attention to the existence of a disclaimer of all warranties on the reverse sides thereof. See *Anderson v. Farmers Hybrid Companies, Inc.* (1980), 87 Ill. App. 3d 493, 408 N.E.2d 1194.

In support of its position that the disclaimers of warranties should be deemed effective, Eastern relies on (1) testimony of Thomas V. Broadhacker that he knew from past experience that standard conditions of sale are normally on the reverse side of quotation forms; and (2) on a statement in *FMC Finance Corp. v. Murphree* (5th Cir. 1980), 632 F.2d 413 (applying Illinois law), that a reasonable business person is expected to have read the entire document creating an obligation. However, subsection 2—316(2) of the UCC (Ill. Rev. Stat. 1983, ch. 26, par. 2—316(2)) explicitly requires that in order for a disclaimer of warranties to be effective, it must be conspicuous, and the purported disclaimer here at issue fails this test. The purchaser's knowledge of the probable existence of such disclaimers or what the purchaser should have read is irrelevant if the purported disclaimer does not pass the muster of subsection 2—316(2). Under the facts here present, we cannot say that the circuit court erred in finding that Eastern's purported disclaimer of all warranties was inconspicuous. See *Anderson v. Farmers Hybrid Companies, Inc.* (1980), 87 Ill. App. 3d 493, 408 N.E.2d 1194.

Eastern further asserts that even if the disclaimer of all war-

ranties stated in its "Standard Conditions of Sale" is ineffective, all warranties with regard to the pipe which it delivered to Bodine should nevertheless be deemed to be excluded by virtue of a custom or usage of the concrete pipe trade which excludes all warranties with respect to concrete pipe. Erickson, who has been involved in the concrete pipe industry for approximately 15 years, testified that it is customary in the industry that provisions such as the disclaimer of all warranties on the reverse side of Eastern's quotation forms are part of the standard conditions of sale. That is because manufacturers have no control over concrete pipe once it is delivered to purchasers. This evidence is uncontradicted.

Subsection 2—316(3)(c) of the UCC (Ill. Rev. Stat. 1983, ch. 26, par. 2—316(3)(c)) does indeed provide for the exclusion of *implied* warranties by course of dealing, course of performance, or usage of trade. However, Erickson acknowledged that he understood that the materials which Eastern supplied to Bodine for use on the Decatur sewer project "would meet the plans and specifications called for in the project." In our view, this statement, coupled with the statement "Plans and Specifications by City of Decatur" appearing on the face of the quotation forms which Eastern furnished Bodine with regard to the Decatur sewer project, is sufficient to establish the existence of an express warranty that the materials which Eastern supplied to Bodine pursuant to the quotations would conform to the city of Decatur's specifications. See *Pacific Marine Schwabacher, Inc. v. Hydroswift Corp.* (Utah 1974), 525 P.2d 615 (description of goods by means of technical specifications which form basis of parties' bargain results in creation of express warranty).

Because subsection 2—316(3)(c) (Ill. Rev. Stat. 1983, ch. 26, par. 2—316(3)(c)) is directed to only implied warranties, subsection 2—316(1) (Ill. Rev. Stat. 1983, ch. 26, par. 2—316(1)), dealing with conflicts between express warranties and negations or limitations of warranties, as well as subsection 1—205(4) (Ill. Rev. Stat. 1983, ch. 26, par. 1—205(4)), dealing with conflicts between the express terms of an agreement and applicable courses of dealing or usages of trade, provide the bases for resolution of the conflict between Eastern's express warranty as to the quality of materials to be delivered to Bodine and the trade custom, or usage excluding all warranties with respect to concrete pipe. Subsection 2—316(1) (Ill. Rev. Stat. 1983, ch. 26, par. 2—316(1)) provides that negation or limitation of warranties is inoperative to the extent that such a construction is unreasonable. And subsection 1—205(4) (Ill. Rev. Stat. 1983, ch. 26, par. 1—205(4)) provides that express terms of the parties' agreement control both courses of

dealing and usages of trade where construing courses of dealing and usages of trade consistently with the express terms would be unreasonable. Obviously, permitting an express warranty which clearly appears of record to be negated by a custom or a usage of trade excluding all such warranties would amount to an unreasonable construction of the terms of the parties' agreement. Subsections 2—316(1) and 1—205(4) require that under circumstances such as those here present, the express warranty must prevail. See *Southern Concrete Services, Inc. v. Mableton Contractors, Inc.* (N.D. Ga. 1975), 407 F. Supp. 581 (construction of a trade usage as negating the express terms of a contract by allowing unilateral abandonment of its specifications is patently unreasonable).

■ Finally, Eastern asserts that Bodine breached its contract for the purchase of concrete pipe, and therefore has no right to reimbursement for its cost of cover, or cause of action for breach of warranty, in that it refused to permit Eastern to cure an August 24, 1984, delivery of at least six pieces of defective pipe through delivery of conforming pipe, and thereafter refused to accept from Eastern further shipments of materials for use on the Decatur sewer project. Eastern maintains (and Bodine does not dispute) that the contract here at issue is an installment contract. Therefore, Eastern argues, its deliveries of defective pipe to Bodine did not provide a basis for Bodine's terminating the parties' entire contract by refusing to accept from Eastern further installments of materials for use on the Decatur sewer project.

Neither party disputes that various installments of pipe which Eastern delivered, particularly installments delivered on August 24, 1984, were nonconforming. Nor do the parties dispute that all of the nonconforming installments delivered prior to August 24, 1984, were cured as a result of Eastern subsequently shipping conforming materials. The essence of the parties' dispute is whether the shipment of substitute pipe delivered on August 25, 1984, adequately cured the defective shipments of pipe delivered on the previous day, within the meaning of subsections 2—507(1) and 2—612(2) of the UCC (Ill. Rev. Stat. 1983, ch. 26, pars. 2—507(1), 2—612(2)), and whether all of the nonconforming pipe delivered by Eastern substantially impaired the value of the entire contract within the meaning of subsection 2—612(3). Ill. Rev. Stat. 1983, ch. 26, par. 2—612(3).

The record discloses that there are five different classes of concrete sewer pipe, denominated class I through class V. Class I is the weakest and class V is the strongest. Virtually all of the pipe delivered by Eastern for use on the Decatur sewer construction project

with which Bodine experienced problems was class III pipe; there is no direct evidence of any problems with regard to class IV or class V pipe. With respect to pipe delivered by Eastern on August 24, 1984, Jenkins testified that he rejected six pieces of a seven-piece delivery outright; he would have permitted use of the remaining piece of pipe (which had a broken spigot), "if they came out of the manhole with that [the broken] portion."

Erickson stated that on August 24, 1984, Broadhacker asked him to come to Bodine's office the following morning. At that same time, Broadhacker confirmed with Erickson an order for three additional truckloads of pipe which Broadhacker had ordered through Eastern's dispatcher. When Erickson met with Richard D. Bodine on the following morning, Bodine told him that he (Bodine) had "had enough of Eastern," that he had "given [Eastern] ample time to solve the problem [with the concrete pipe]," and that Bodine had decided that he did not want Eastern "as a supplier anymore of the concrete pipe." At that meeting, Erickson was not given a chance to point out to Bodine that Eastern had attempted to cure the problems which Bodine experienced with the pipe, particularly installments delivered on August 24, 1984.

Broadhacker testified that on August 24, 1984, he was informed that Eastern was going to deliver a shipment of class V pipe, and that Bodine had not laid any class V pipe prior to that time.

The pipe which Bodine rejected on August 24, 1984, was 30-inch class III pipe, and Eastern's replacement shipment on the following day consisted of class V pipe which neither party asserts was of a different size from the class III pipe rejected on the previous day. Although Richard D. Bodine testified that the parties' contract specified class III pipe for the segment of pipe being laid on August 24, 1984, and that that is what he wanted, there is no indication in the record that the 30-inch class V pipe differed in any respect from the class III pipe, except for its added strength, or that the 30-inch class V pipe was in any respect incapable of functioning in exactly the same manner as class III pipe. There is also no evidence that the class V pipe which Eastern delivered on August 25, 1984, in substitution for defective class III pipe, delivered on August 24, 1984, was in any way defective.

Following the parties' August 25, 1984, meeting, Bodine sent Eastern a notice by means of which it purported to reject in part the construction materials which Eastern previously delivered and rejected "in their entirety those construction materials which [Eastern was] to provide pursuant to the attached quotation." (No copy of a

quotation is attached to the copy of this notice which appears in the record.) The notice further provided:

> "The reason for this rejection (or revocation of acceptance) is the bell ends of the concrete pipe which you have provided to date are of defective construction in that they are weak and crumble and are of otherwise insufficient strength and structural integrity to meet the specifications for use in the project for which you knew they were intended."

The notice also stated that Bodine elected to accept those materials which it had already installed, that materials delivered by Eastern and not installed would be segregated and held pending instructions as to their disposition, and that Bodine would accept no further deliveries from Eastern.

We first consider whether Bodine improperly rejected the class V pipe delivered on August 25, 1984. The perfect tender rule is generally applicable to all transactions within the scope of the UCC, unless it otherwise provides. (*Moulton Cavity & Mold, Inc. v. Lyn-Flex Industries, Inc.* (Me. 1979), 396 A.2d 1024; *Ramirez v. Autosport* (1982), 88 N.J. 277, 440 A.2d 1345.) An exception to the rule exists with respect to installment contracts, so that nonconformities in tendered installments must substantially impair the value thereof and must be incapable of being cured in order for the buyer to properly reject them. (Ill. Rev. Stat. 1983, ch. 26, par. 2—612(2).) Although the defective installments of pipe delivered by Eastern on August 24, 1984, may have substantially impaired the value of those installments, there is no evidence that the defects in those installments were incapable of being cured. The class V pipe delivered on August 25, 1984, was, therefore, an attempted cure of the defective August 24, 1984, installments, which Bodine was required to accept if it amounted to a perfect tender. See Ill. Ann. Stat., ch. 26, par. 2—106, Code Commentary, at 104 (Smith-Hurd 1963); R. Anderson, *Anderson on the Uniform Commercial Code* sec. 2—508:12, at 669, (3d ed. 1983).

In determining whether Eastern's August 25, 1984, delivery of class V pipe, in substitution for the defective class III pipe delivered on the previous day, constituted a perfect tender, we note that in earlier times, the perfect tender rule was interpreted and applied in a very strict manner. (See, *e.g., Filley v. Pope* (1885), 115 U.S. 213, 29 L. Ed. 372, 6 S. Ct. 19 (buyer justified in rejecting otherwise conforming shipment of iron shipped to New Orleans from Leith, rather than Glasgow, Scotland, where contract specified that iron was to be shipped from Glasgow).) In recent years, however, the rule has been applied in a less rigid fashion. See *Intermeat, Inc. v. American Poul-*

*try, Inc.* (2d Cir. 1978), 575 F.2d 1017 (buyer improperly rejected tender of meat of same type but carrying a brand name different from that specified in parties' agreement).

In the case at bar, there is no indication that the class V pipe delivered to the Bodine job site on August 25, 1984, was in any way defective or that it was in any way incapable of performing as well as class III pipe. Moreover, the time for performance had not expired at the time of Eastern's attempted August 25, 1984, cure. (See Ill. Rev. Stat. 1983, ch. 26, par. 2—508(1).) We therefore conclude that the August 25, 1984, delivery of class V pipe constituted a perfect tender in cure of Eastern's August 24, 1984, delivery of defective 30-inch class III pipe.

Finally, we must consider whether the various deliveries of defective pipe, taken together, provided a basis for Bodine's cancellation of the parties' contract by means of its informing Eastern, following its rejection of Eastern's August 25, 1984, deliveries, that it would not accept from Eastern further deliveries of materials for use on the Decatur sewer construction project. At the outset, it should be noted that Eastern's failure to provide Bodine with assurances of future performance regarding the quality of the remaining materials which it was to provide Bodine for use on the Decatur sewer construction project, does not provide a basis for the circuit court's finding that Bodine properly rejected future deliveries from Eastern. The record contains no indication that Bodine at any time placed a demand for assurances of future performance on the part of Eastern in writing, and a demand for assurances of future performance is ineffectual unless placed in writing. Ill. Rev. Stat. 1983, ch. 26, par. 2—609(1); *Automated Energy Systems, Inc. v. Fibers & Fabrics of Georgia, Inc.* (1982), 164 Ga. App. 772, 298 S.E.2d 328.

The UCC subsection dealing with substantial impairment of an installment contract provides:

> "Whenever non-conformity or default with respect to one or more installments substantially impairs the value of the whole contract there is a breach of the whole. But the aggrieved party reinstates the contract if he accepts a non-conforming installment without seasonably notifying of cancellation or if he brings an action with respect only to past installments or demands performance as to future installments." Ill. Rev. Stat. 1983, ch. 26, par. 2—612(3).

In support of its argument that the defective deliveries of pipe prior to August 25, 1984, substantially impaired the value of the parties' contract, Bodine points out that as of that date, the project had

reached a point where the depth of the pipe laid would increase from 6 or 8 feet to 23 feet. Extracting unusable pipe from 23-foot depths would result in lost time as well as danger to workers. Bodine also notes that it, and not Eastern, had absolutely warranted for one year the performance of the pipe installed in the course of the Decatur sewer construction project. Citing *Zabriskie Chevrolet, Inc. v. Smith* (1968), 99 N.J. Super. 441, 240 A.2d 195, Bodine further argues that in order for it to establish that it properly refused to accept shipments of pipe and other materials from Eastern subsequent to August 25, 1984, it was only necessary that it prove that as of that date, its faith in the quality of future materials to be delivered by Eastern had been shaken. See also *Overland Bond & Investment Corp. v. Howard* (1972), 9 Ill. App. 3d 348, 292 N.E.2d 168.

Neither *Zabriskie Chevrolet* nor *Howard* involved installment contracts. More importantly, however, recent decisions make it clear that under the test stated in these two cases, the buyer's subjective belief as to the reduced value of goods tendered is of no significance. Rather, in order to establish substantial impairment of the value of goods delivered, the buyer must present objective evidence that with respect to its own needs, the value of the goods was substantially impaired. *GNP Commodities, Inc. v. Walsh Heffernan Co.* (1981), 95 Ill. App. 3d 966, 420 N.E.2d 659; *Asciolla v. Manter Oldsmobile-Pontiac, Inc.* (1977), 117 N.H. 85, 370 A.2d 270; *Gasque v. Mooers Motor Car Co.* (1984), 227 Va. 154, 313 S.E.2d 384.

■ Upon thoroughly reviewing all of the evidence presented at the trial of this cause, we have concluded that there is insufficient proof of substantial impairment of the value of the parties' contract to sustain the trial court's judgment. First of all, there is no evidence that any of the pipe which Eastern tendered in cure of its defective deliveries was in itself defective. Second, Eastern always responded to any complaints on the part of Bodine regarding defects in the pipe which it delivered by making curative deliveries of conforming pipe. Third, although the trial was held in July 1985, almost a year after the installation of the last pipe supplied by Eastern for use in the Decatur sewer construction project, there is no evidence that during the intervening period it had become necessary for Bodine to dig up and remove any of the pipe supplied by Eastern because of defects therein. Fourth, the record is devoid of any evidence that Eastern's deliveries of defective pipe substantially impeded the progress of the sewer construction project or caused it to be completed at a date later than that specified in the contract between Bodine and the city of Decatur. Although Richard D. Bodine did testify that soon after Au-

gust 24, 1984, the depth at which the pipe was being laid would increase, there is no evidence that prior to that date, Bodine had had to retrieve large quantities of damaged pipe from ditches. Instead, the evidence, considered as a whole, suggests that Bodine discovered the great majority of the defects in the pipe before its workers placed it in ditches.

In sum, the only evidence of deficient performance by Eastern of its contractual obligations to Bodine is that it occasionally delivered defective concrete pipe (and on one occasion delivered a defective manhole) for use in the sewer construction project. However, it always cured the defective deliveries on demand, as was its right under sections 2—508 and 2—612 of the UCC (Ill. Rev. Stat. 1983, ch. 26, pars. 2—508, 2—612). Where, as here, defective deliveries pursuant to an installment contract are consistently corrected, and the purchaser, during the time for the contract's performance, voices no concerns to the seller with respect to delays occasioned by the defective deliveries, the nonconforming deliveries do not substantially impair the value of the entire contract. See *Holiday Manufacturing Co. v. B.A.S.F. Systems, Inc.* (D. Neb. 1974), 380 F. Supp. 1096.

Providing additional support for our conclusion that Eastern's nonconforming deliveries cannot be said to have substantially impaired the value of the parties' entire contract are the portions of the code commentary pertaining to section 2—610 of the UCC (Ill. Rev. Stat. 1983, ch. 26, par. 2—610), which section sets out the courses of action available to the aggrieved party when another party commits an anticipatory repudiation of a contract. The code commentary for section 2—610 provides in pertinent part:

"2. It is not necessary for repudiation that performance be made literally and utterly impossible. Repudiation can result from action which reasonably indicates a rejection of the continuing obligation. * * *

3. The test chosen to justify an aggrieved party's action under this section [*e.g.*, cancellation of a contract] is the same as that in the section on breach in installment contracts—namely the substantial value of the contract. The most useful test of substantial value is to determine whether material inconvenience or injustice will result if the aggrieved party is forced to wait and receive an ultimate tender minus the part or aspect repudiated." (Ill. Ann. Stat., ch. 26, par. 2—610, Code Commentary, at 477-78 (Smith-Hurd 1963).)

In the present case, there is simply no basis for saying that Eastern's conduct "reasonably indicated" a rejection of its continuing obligation

to supply Bodine with the materials which Bodine needed to complete construction of the Decatur sewer project. Rather, Eastern's conduct up until the time that Bodine rejected Eastern's final delivery of pipe on August 25, 1984, indicated that Eastern was ready and willing to immediately provide conforming replacement tenders for any and all defective materials which it delivered, and to otherwise fully perform its contractual obligations to provide Bodine with pipe and other materials for use in the sewer project. For the same reason, it cannot be said that Bodine's receiving from Eastern the materials which it required to complete the Decatur sewer construction project would have resulted in "material inconvenience or injustice" to Bodine.

■ To summarize, there was no legal justification for Bodine's rejection of Eastern's August 25, 1984, shipment of pipe, or for Bodine's subsequent refusal to accept from Eastern further deliveries of the materials required to complete construction of the Decatur sewer project. These actions negated all warranty provisions of the parties' contract. (*E.g., Peter Pan Seafoods, Inc. v. Olympic Foundry Co.* (1977), 17 Wash. App. 761, 565 P.2d 819.) *Ergo*, the circuit court erred in awarding Bodine its excess costs incurred in obtaining from other suppliers the concrete pipe which it was obligated to accept from Eastern, and the judgment in Bodine's favor must be reversed.

Reversed.

GREEN and SPITZ, JJ., concur.