CLEO J. DELONG, Plaintiff-Appellee, v. CABINET WHOLESALERS, INC., Defendant-Appellant.

First District (1st Division)   No. 1—88—1671

Opinion filed April 16, 1990.

BUCKLEY, P.J., dissenting.

Sherwood M. Zwirn & Associates, of Northbrook (David R. Wiltse, of counsel), for appellant.

Russell J. Stewart, of Park Ridge, for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

The plaintiff, Cleo DeLong, sued the defendant, Cabinet Wholesalers, for breach of contract. The plaintiff alleged that he had ordered cabinet doors from the defendant, but the cabinet doors he received were not the same color as the doors he had ordered. In addition, the plaintiff alleged that the defendant had refused to exchange the doors. The trial court entered judgment in favor of the plaintiff and ordered that the defendant pay the plaintiff $1,074. The trial court also instructed the plaintiff to return the cabinet doors to the defendant. The defendant now appeals the trial court's decision. We affirm.

At trial, the plaintiff appeared *pro se* and testified that he and his wife went to the defendant's store to buy kitchen cabinets. The plaintiff and his wife looked at the display of cabinet doors and ordered some oak doors from the display. The plaintiff said that when the cabinet doors arrived, however, they did not look like the cabinet

doors that had been on display. The plaintiff explained that the display cabinets were a solid color, but the cabinet doors that were delivered had distinct shadings of red, white and yellow, giving the cabinets a striped appearance. The plaintiff testified that he and his wife then went to the defendant's store and told one of the defendant's employees that the doors they had received were the wrong color. The employee told the plaintiff to return the next day and that it would be "no problem" to exchange the doors.

When the plaintiff and his wife returned the next day and spoke with another employee, however, that employee said that if the problem was with only one or two cabinet doors, the defendant would exchange them. The plaintiff told the employee that there was a problem with all of the doors. The employee then said that the defendant would not exchange them. Finally, the plaintiff testified that he had never installed the cabinet doors and had them stored in his basement.

On cross-examination, the plaintiff said that the cabinet doors he chose at the store were a light oak and were all the same color. The doors he received, however, were striped. The plaintiff also said that some of the doors looked worse than others. The plaintiff testified that he asked the defendant's employees to exchange the cabinets for the right color, and even agreed to take a darker color, but they refused.

The plaintiff's wife also testified and said that the cabinet doors she and the plaintiff chose were all one color, but the cabinets they received looked striped and were not the cabinets they had selected at the store. Mrs. DeLong said that when they went to the defendant's store to discuss the problem, an employee of the defendant told them that they should return the next day, and that there would be no problem exchanging the cabinets. The next day, however, another employee told them that the defendant would only exchange the cabinets if there was a problem with one or two doors, but that the defendant would not take back all the doors. Mrs. DeLong said that the defendant's employees then refused to talk with them anymore. On cross-examination, Mrs. DeLong said that she and the plaintiff never brought the cabinet doors back to the store, but explained that the defendant's employees never asked them to bring the doors back.

The defendant moved to dismiss the case following Mrs. DeLong's testimony. The trial court denied the motion. The defendant then presented the testimony of Joseph Valentino, the defendant's sales manager. Valentino said that the plaintiff came into the store one day and told him that a delivery of cabinet doors that he and his

wife had received did not match those that they had ordered. Valentino then checked the plaintiff's order and ascertained that the cabinets that had been delivered were in the same style and color as those he had ordered. Valentino then explained to the plaintiff that there is a variance in the color of wood when it is stained with a light-colored stain. Valentino said that when he asked the plaintiff how many cabinets were the wrong color, the plaintiff replied that he had only opened two boxes. Valentino said that he told the plaintiff to open the rest of the boxes and bring back a list of the problems. Valentino stated that he never spoke with the plaintiff again.

Valentino next explained that the oak cabinets ordered by the plaintiff are made of both red and white oak and are stained. According to Valentino, no two cabinet doors look exactly the same. Valentino said that in his experience, customers are advised that not all cabinets are exactly the same since they are made from natural wood. The variance in the cabinets is due to the fact that wood absorbs stain differently and because both red and white oak are used. Valentino then said that the plaintiff did not bring the cabinets back into the store. Finally, on cross-examination, Valentino said that he was not the sales person that plaintiff spoke with when he ordered the cabinets.

Following Valentino's testimony, the trial court entered judgment for the plaintiff. The court instructed the plaintiff to return the cabinets to the defendant, at which time the defendant was ordered to pay the plaintiff $1,074, the full amount that the plaintiff had paid for the cabinets.

On appeal, the defendant first contends that the trial court erroneously entered judgment in favor of the plaintiff because the plaintiff failed to provide it with an opportunity to cure the defects in the cabinets. Defendant claims it was entitled to cure the defects, under section 2—508 of the Uniform Commercial Code (Ill. Rev. Stat. 1987, ch. 26, par. 2—508). The defendant also contends that the plaintiff failed to establish that the cabinets were defective because he never brought them to the store for inspection. In support of its argument for reversal, the defendant alleges that it repeatedly asked the plaintiff to bring the cabinets to the store and also offered to cure the defects.

In response, the plaintiff argues that he was ready at all times to return the cabinet doors to the defendant, but that the defendant refused to accept them. Further, the plaintiff notes that the defendant never requested production of the doors at any point during this litigation. Plaintiff states that since the defendant never offered or

asked to cure the defects in the cabinets, the Uniform Commercial Code does not apply and the defendant is not entitled to a reversal of the judgment against it.

■■■ Section 2—508 of the Uniform Commercial Code provides:

"Where any tender or delivery by the seller is rejected because non-conforming and the time for performance has not yet expired, the seller may reasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery." (Ill. Rev. Stat. 1987, ch. 26, par. 2—508(1).)

In ruling for the plaintiff, the trial court concluded that the defendant did not offer to cure the defective cabinets. The trial court is in the best position to evaluate the credibility of witnesses; therefore, its verdict should not be reversed unless it is against the manifest weight of the evidence. (See *Bodine Sewer, Inc. v. Eastern Illinois Precast, Inc.* (1986), 143 Ill. App. 3d 920, 924, 493 N.E.2d 705, 708.) A trial court's ruling is against the manifest weight of the evidence when an opposite conclusion is clearly apparent. *Balla v. Department of Revenue* (1981), 96 Ill. App. 3d 293, 296, 421 N.E.2d 236, 239; *Roth v. Lissner Iron & Metal Co.* (1967), 88 Ill. App. 2d 352, 355-56, 232 N.E.2d 534, 536.

■■ The only evidence in this case supporting the defendant's claim that it offered to cure the defects in the plaintiff's cabinets was Valentino's testimony that he told the plaintiff to open all the boxes of cabinets and return to the store with a list of the problems. The plaintiff and his wife, however, testified that the defendant's employees unequivocally stated that the defendant would not replace the cabinets. Furthermore, there was no evidence that the defendant asked the plaintiff to bring the cabinets back to the store or asked to inspect them. Resolution of this case depended upon a determination of which witnesses were more credible. There was sufficient evidence in the record supporting the plaintiff's claim that the defendant refused to take back the cabinets or cure the defects. Accordingly, the trial court's ruling for the plaintiff was not so improbable or impossible that an opposite conclusion is clearly warranted.

■■ In support of its argument that it was entitled to cure the defective cabinets, the defendant relies on the *Bodine Sewer v. Eastern Illinois Precast* case. That case is distinguishable from the present case. In *Bodine Sewer*, the court held that a seller's attempted cure for some defective pipes constituted a perfect tender. (143 Ill. App. 3d 920, 493 N.E.2d 705.) In that case, however, the seller did deliver some pipe to replace a delivery of defective pipe

and the seller "always responded to any complaints on the part of [the buyer] regarding defects in the pipe which it delivered by making curative deliveries of conforming pipe." (*Bodine Sewer*, 143 Ill. App. 3d at 931, 493 N.E.2d at 713.) Here, there was no evidence that the defendant ever offered to make curative deliveries for the defective cabinets or even asked to inspect the cabinets. Considering all of the evidence presented, this court concludes that there was ample evidence to support the trial court's verdict in favor of the plaintiff and insufficient evidence to support the defendant's claim that it requested an opportunity to cure.

The defendant next contends that the trial court's finding for the plaintiff was against the manifest weight of the evidence. The defendant contends that the testimony of the plaintiff and his wife was contradictory and did not establish that their cabinet doors were nonconforming goods. In response, the plaintiff maintains that the trial court's verdict was not against the manifest weight of the evidence because an opposite conclusion was not clearly evident from the record.

■■ As noted, because a trial court is in the best position to evaluate the credibility of the witnesses, its verdict should not be reversed unless it is against the manifest weight of the evidence (*Bodine Sewer*, 143 Ill. App. 3d at 924, 493 N.E.2d at 708), and a verdict is against the manifest weight of the evidence only when a conclusion opposite that reached by the trial court is clearly apparent (*Balla*, 96 Ill. App. 3d at 296, 421 N.E.2d at 239; *Roth*, 88 Ill. App. 2d at 355-56, 232 N.E.2d at 536). The trial court's decision in this case was based on its conclusion that the plaintiff and his wife were the more credible witnesses. A conclusion opposite that reached by the trial court is not clearly apparent from the evidence presented; therefore, this court will not reverse the trial court's verdict.

Accordingly, for all of the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

MANNING, J., concurs.

PRESIDING JUSTICE BUCKLEY, dissenting:
I respectfully dissent because I believe that the trial court's finding that the cabinet doors were nonconforming goods is against the manifest weight of the evidence.

Although the Code permits a buyer the right to reject tendered

goods, cancel the contract, and recover the purchase price where the tender of delivery fails "in any respect to conform to the contract" (Ill. Rev. Stat. 1987, ch. 26, pars. 2—106, 2—601, 2—711), it is incumbent upon the plaintiff when seeking recovery under these provisions to prove that the tendered goods were not a "perfect tender." Admittedly, the parties presented contradictory testimony as to whether the cabinet doors delivered to plaintiff were nonconforming due to a disparity in the color and stain chosen by plaintiff from the door display and that on the doors delivered to plaintiff. A reviewing court generally will not reverse a finding which rests upon the credibility of the witnesses. Here, however, plaintiff, who testified that he never installed the cabinets and had them stored in his basement, had in his control the physical evidence which would indisputably prove that the door display produced at trial by defendant was not the same color and stain as the doors tendered to him; yet, he failed to produce the cabinet doors at trial. It is established that a party's failure to produce physical evidence within his control which he would be reasonably expected to produce in support of his position creates a presumption or an inference that the evidence, if produced, would have been adverse to him. (*Costello v. Capital Cities Communications, Inc.* (1988), 125 Ill. 2d 402, 532 N.E.2d 790; *Tepper v. Campo* (1947), 398 Ill. 496, 76 N.E. 490; *Kane v. Northwest Special Recreation Association* (1987), 155 Ill. App. 3d 624, 508 N.E.2d 257; *Nakis v. Amabile* (1981), 103 Ill. App. 3d 840, 431 N.E.2d 1255; S.A. Gard, Illinois Evidence Manual R. 3.23 (2d ed. 1979).) In view of the adverse inference or presumption that production of the cabinet doors would have shown a conforming tender, a conclusion opposite from the trial court's finding that plaintiff's and his wife's testimony was more credible than defendant's witness' testimony is clearly apparent from the record.