SHERRY LYNN WHITMER, A Minor, by Her Father and Next Friend, EDWARD WHITMER, Plaintiff, *v.* ROBERT SCHNEBLE *et al.*, Defendants and Third-Party Plaintiffs-Appellants.—(THE HOUSE OF HOYT, INC., Third-Party Defendant-Appellee.)

(No. 74-93; )

Second District (1st Division)—June 26, 1975.

Korf, Pfeil & Graves, of Elkhorn, Wisconsin, and John P. Graves, of Rockford, for appellants.

Robert K. Clark, of Rockford, for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

Robert and Frances Schneble owned a female Doberman Pinscher which bit a child in their home. When sued under the Illinois dog bite statute, they filed a third-party complaint against the House of Hoyt from whom they had purchased it. The trial court struck their amended third-party complaint, ordered that Hoyt go hence without day and found no just reason to delay enforcement or appeal.

On appeal, the Schnebles contend, on the basis of the allegations of their amended third-party complaint, (1) that Hoyt is liable to them (a) because of the breach of an express warranty; or (b) because it failed to warn them of the propensities of such a dog; or (c), under strict liability for selling them an "inherently dangerous" product; (2) that, liability being thus established, they have a valid third-party complaint against Hoyt in the instant action; and (3) that such is not barred by any statute of limitations. We disagree with their first and second contentions and therefore affirm, without reaching their third contention.

From the various pleadings, the following facts appear. On July 26, 1968, Robert and Frances Schneble bought a female Doberman Pinscher

from the House of Hoyt. Their unsworn amended third-party complaint alleges that the dog was represented to them as a "docile dobe," appropriate for one "who is in need of a dog for companionship and friendship, but wants very little aggressiveness in him," etc., but, Hoyt's sworn motion to strike and dismiss attaches the bill of sale for the dog, signed by the Schnebles, which describes the dog as "medium aggressive," which is further described in the literature furnished them as a dobe that "can love and fight with equal zeal" and is suitable "for people who want true protection * * *." The Schnebles concede this in their reply, and we conclude that the latter is the correct version.

Some 2½ years later the dog was bred and on December 31, 1970, puppies were born. On January 9, 1971, Sherry Lynn Whitney, a neighbor's child, was viewing the puppies in the presence of both of the Schnebles, when she was bitten by their mother. On June 25, 1973, the child, by her father, sued the Schnebles under the Illinois "dog-bite" statute (then Ill. Rev. Stat. 1971, ch. 8, § 12d, now Ill. Rev. Stat. 1973, ch. 8, § 366), which, in pertinent part, provides that:

"If a dog, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained. * * *"

On June 25, 1973, the Schnebles filed a third-party complaint which they later amended. Count I was on an express warranty; Count II was for failure to warn of the dog's propensities, etc., and Count III was in strict liability on the ground that the dog Hoyt sold them was an "unreasonably dangerous" product. It sought indemnity from Hoyt for any judgment against them, plus attorney's fees, etc. The trial court, as we have said, struck the amended third-party complaint, sent Hoyt hence without day and found no just cause to delay enforcement or appeal.

I

The Schnebles first contend (a) that Hoyt is liable to them because of the breach of an express warranty that the "dobe" was "docile," etc.

■■ It is very doubtful whether any of the language alleged in Count I amounted to an express warranty. Statements merely of the seller's opinion or sales talk do not constitute express warranties. (*Olin Mathieson Chemical Corp. v. Moushon* (1968), 93 Ill.App.2d 280, 235 N.E.2d 263; *Weiss v. Rockwell Manufacturing Co.* (1973), 9 Ill.App.3d 906, 293 N.E.2d 375.) Furthermore, as we have indicated, the bill of sale and brochure, which the Schnebles concede, destroy their claim.

■■ But even if there were an express warranty, it would not appear

that there was a breach. Nowhere do the Schnebles allege that Hoyt stated that the dog would not bite. Even a docile dog is known and expected to bite under certain circumstances. (See Restatement of Torts § 518, comment g (1938), and Restatement (Second) of Torts § 290, comment g (1965).) And this court will not infer a warranty that the dog will never bite from the language which was used. "[T]he law will not lend itself to the creation of an implied warranty which patently runs counter to the experience of mankind or known forces of nature. It will not read into any sale or bailment a condition or proviso which is unreasonable, impossible, or absurd." *Meester v. Roose* (1966), 259 Iowa 357, 144 N.W.2d 274, 276.

■■ In addition, the statements complained of only describe the personality of the dog at the time it was sold. There is no warranty by the seller that the dog's personality will not change in the future. (See 63 Am. Jur. 2d *Products Liability* § 95 (1972).) Yet the plaintiff did not allege that there had been a breach of the warranty on the date of the sale or that the condition of the dog had remained unchanged during the 2½ years since the sale. Indeed, it would be difficult for the plaintiffs to so allege since the dog had new masters, gotten older and had puppies.

We therefore conclude that there is no merit to this contention.

The Schnebles next contend (b) that Hoyt is liable to them because it failed to warn them of the propensities of such a dog.

It is common knowledge that dogs bite. As Isaac Watts put it in his *Divine Songs:*

> "Let dogs delight to bark and bite
> For God hath made them so;
> Let bears and lions growl and fight
> For 'tis their nature too."

Or as remarked by John B. Bogart and quoted by Frank O'Brien in the *Story of the Sun:*

> "When a dog bites a man,
> that is not news because it happens
> so often. But if a man bites a
> dog, that is news."

It is a truism that an animal mother will protect her young. And "the keeper of an ordinary gentle bitch or cat is required to know that while she is caring for her puppies or kittens, she is likely to attack other animals and human beings." (Restatement of Torts § 518, comment g (1938).) Likewise, as is stated in the Restatement (Second) of Torts § 290, comment g (1965):

> "*Knowledge of habits of animals.* A reasonable man is required

to have such knowledge of the habits of animals as is customary in his community. Thus, he should know that certain objects are likely to frighten horses and that frightened horses are likely to run away. He should know that cattle, sheep and horses are likely to get into all kinds of danger unless guarded by a human being, that bulls and stallions are prone to attack human beings and that even a gentle bitch, nursing her pups, is likely to bite if disturbed by strangers."

Thus, the Schnebles were charged with notice when they bought the dog and when they bred her that she might bite and cannot now complaint that they were not informed and warned by the House of Hoyt of what all men know.

The Schnebles next contend that Hoyt is liable to them, under strict liability, because it sold them an "inherently dangerous" product.

While a product need not be "manufactured" and may be a viable thing (*Cunningham v. McNeal Memorial Hospital* (1970), 47 Ill.2d 443, 266 N.E.2d 897), nevertheless, before the doctrine of *Suvada v. White Motor Co.* (1965), 32 Ill.2d 612, 210 N.E.2d 182, may be applied, its nature must be fixed when it leaves the manufacturer's or seller's control. And the product must reach the user without substantial change. (Restatement (Second) of Torts § 402A (1965), quoted in *Suvada.*) The purpose of imposing strict liability is to insure that the costs of injuries resulting from defective products are borne by those who market such products rather than by the injured persons, who are powerless to protect themselves (63 Am. Jur. 2d *Products Liability* § 123 (1972).) This purpose would be defeated if *Suvada* were to be applied to products whose character is shaped by the purchaser rather than the seller. Yet quite obviously, a dog's character is affected by its owner's personality, their treatment of it, the affection, indifference or even brutality shown to it. The dog also changes with maturity, with maternity, and as a result of outside events.

Yet, even if the bitch here were a "product" within the doctrine laid down by *Suvada,* the third-party defendant would not be liable.

■■ There is no duty to produce an accident-proof product or one that is foolproof. (*Fanning v. LeMay* (1967), 38 Ill.2d 209, 230 N.E.2d 182; *Jonescue v. Jewel Home Shopping Service* (1973), 16 Ill.App.3d 339, 306 N.E.2d 312, 63 Am. Jur. *Products Liability* § 51 (1972).) There is no duty to deal in a perfect product or in a product in the use of which the occurrence of injury is totally impossible. (63 Am. Jur. *Products Liability* § 51 (1972).) Likewise generally, when a product contains dangerous ingredients which are natural or inherent, the product is not defective

and it is only when the manufacturer could not reasonably expect the consumer to discover the natural substance in the final product that liability results. 86 C.J.S. *Torts* § 18.2.

In *Fanning v. LeMay* (1967), 38 Ill.2d 209, 211-12, 230 N.E.2d 182, our supreme court stated:

> "The defendants contend that the complaint is insufficient in law because it fails to allege facts showing any defect in the shoes. We agree. * * * The most that is alleged in the case at bar is that the soles of the shoes became slippery when wet. No facts are alleged setting forth any specific defect in the shoes, nor are there facts to show that in the respect alleged they were any different from shoes ordinarily worn by millions of other people. It is a matter of common knowledge that shoes are more likely to slip when wet than when dry, but this provides no basis for the conclusion that a particular pair of shoes is dangerous or unsafe.
>
> * * *
>
> The basis for liability in tort is not the mere fact of injury but injury caused by fault, and a complaint which fails to allege facts, the existence of which is necessary to enable the plaintiff to recover, does not state a cause of action. Such deficiency cannot be remedied by liberal construction or by argument."

■■ Likewise, in this case there is nothing to suggest in what manner this Doberman was "inherently dangerous" other than the tendency which almost all bitches (which have just whelped) have, to bite someone approaching her pups.

In short, all mankind, and this court as well, is aware that dogs bite and that bitches which have just whelped and are watching their pups will fulfill their natural maternal instinct and bite a stranger who approaches. It is unfortunate of course that in this case the dog's bite was worse than her bark.

We therefore conclude that Hoyt is not liable to the Schnebles.

## II

■■ The Schnebles also contend that, liability being thus established, they have a valid third-party complaint against Hoyt in this action.

Even were Hoyt liable to the Schnebles (which, as we have demonstrated, is not so), they would not have a valid third-party complaint against Hoyt in this action because their own actions, in taking a neighbor's child down to visit their Doberman Pinscher with 9-day-old pups, could not possibly be viewed as "passive" negligence.

There was here no express agreement by Hoyt to indemnify the Schnebles for damages resulting from actions of the dog it sold them.

Hence the only possible theory would be on an "active-passive" theory. ■■ In *Carver v. Grossman* (1973), 55 Ill.2d 507, 305 N.E.2d 161, in reversing a judgment against the third-party defendant, our supreme court, at pages 510-514, said:

> "Illinois has long adhered to the rule that there can be no contribution among joint tortfeasors. (See *Nelson v. Cook* (1856), 17 Ill. 443; *Johnson v. Chicago and Pacific Elevator Co.* (1882), 105 Ill. 462; *Skala v. Lehon* (1931), 343 Ill. 602; *Miller v. DeWitt* (1967), 37 Ill.2d 273.) * * * The theory of implied indemnity has been applied judicially to mitigate the harsh effect that could result from an inflexible application of the rule which prohibits contributions. (*Muhlbauer v. Kruzel,* 39 Ill.2d 226, 230; see also *Gertz v. Campbell,* 55 Ill.2d 84.) We are called upon by the third-party complaint in this case to again apply the theory of implied indemnity.

> * * *

> We feel that the evidence in this case fails to establish Grossman's right to indemnity from Bishop, the owner of the service station, because the evidence clearly establishes that his decedent, Putnam, was himself guilty of active negligence. Grossman has oversimplified the facts in asserting that Bishop created the hazardous condition and Putnam merely failed to discover the condition in which Bishop had left the car. He further contends that Putnam performed 'the usually harmless act of turning an ignition key,' which under the circumstances of this case proved not to be 'the usually harmless act.'

> * * * It was the negligent act of Putnam in starting the engine while the car was in gear without depressing the clutch or applying the brake that caused the car to move forward and strike Carver. We cannot characterize this negligence as passive so as to permit the shifting of the entire responsibility from him to Bishop for injuries to which he very substantially contributed. It cannot be said that the principal or moving cause of the injury was the act of Bishop and that Putnam simply failed to discover or correct the situation which Bishop had created. * * *

> "The contention of Grossman is similar to that of the third-party plaintiff in *Gillette v. Todd,* 106 Ill.App.2d 287. In that case a school teacher was injured when an employee of the defendant opened the door in the school house causing the door to strike the teacher. The teacher brought suit against the defendant for her injuries and the defendant filed a third-party complaint against the school district alleging that the injury was due to the active

negligence of the school in designing, constructing and equipping the door which struck the plaintiff. The court observed that it was apparent that the conduct of the defendant, if found to be negligence in the principal action, could only be classified as active negligence and that it was not the condition of the door alone which caused injuries to the plaintiff. It, at the very least, required the active and potentially negligent act by the defendant to cause the injury. The court observed that if the defendant was in fact guilty of active negligence, there could be no indemnity from the school district irrespective of whether the negligence of the school district was classified as active or passive. 106 Ill.App.2d at 293."

To the same general effect, see *Gillette v. Todd* (1969), 106 Ill.App.2d 287, 293-294, 245 N.E.2d 923; *Moody v. Chicago Transit Authority* (1974), 17 Ill.App.3d 113, 116—117, 307 N.E.2d 789; *Burke v. Sky Climber, Inc.* (1974), 57 Ill.2d 542, 545—546, 316 N.E.2d 516; *Stewart v. Mister Softee of Illinois, Inc.* (1966), 75 Ill.App.2d 328, 330-331, 221 N.E.2d 11; *St. Joseph Hospital v. Corbetta Construction Co.* (1974), 21 Ill.App.3d 925, 957-961, 316 N.E.2d 51.

We therefore conclude that, even were Hoyt liable to the Schnebles (which is not so), they would not have a valid third-party complaint against it.

As a result, we affirm, without reaching the statute of limitations issue.

Affirmed.

SEIDENFELD, P. J., and GUILD, J., concur.