James D. **LATHAM** and Roberta M. Latham, Plaintiffs/Appellants,

v.

**WAL–MART STORES, INC.** and Charles Bezoni and General Petco Corporation and Gators of Miami (Third–Party Defendant), Defendants/Respondents.

No. 59064.

Missouri Court of Appeals, Eastern District, Division Two.

Sept. 24, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 30, 1991.

Application to Transfer Denied Dec. 17, 1991.

Thomas J. Casey, St. Louis, for plaintiffs/appellants.

Stefan J. Glynias, Jeffrey Keith Fischer, Lisa Green, St. Louis, for defendants/respondents.

GARY M. GAERTNER, Presiding Judge.

Appellants, James and Roberta Latham, appeal a grant of summary judgment in favor of respondents, Wal–Mart, Inc., and Charles Bezoni on appellants' product-liability claim. We affirm.

On or about January 22, 1987, appellant, Roberta Latham, ordered a parrot at a Wal–Mart store managed by respondent, Charles Bezoni. Respondents claim that this transaction was unusual because they do not normally sell parrots, and because the bird had to be specially ordered. This was done at the express request of appellant Roberta Latham, who was an employee of that particular Wal–Mart store.

The bird was delivered to Wal–Mart on or about February 24, 1987. Appellant was notified of the delivery and picked up the bird within 30 minutes. Both respondents allege the bird was never removed from its container, nor handled by them in any way.

On November 4, 1988, appellants filed suit against three parties: Wal–Mart, the retailer of the bird; Charles Bezoni, the manager of the individual store which sold the bird to the employee-appellant; and General Petco, the corporation from which Wal–Mart received the bird. General Petco impleaded Gators of Miami, Inc. as a third-party defendant. In their petition, appellants alleged that, at the time they received the bird, it was infected with psittacosis, a disease transmittable to humans, which is much like pneumonia. Appellants further contend that James Latham, Roberta Latham's husband, contracted psittacosis from the bird, and displayed various pneumonic symptoms (fever, nausea, loss of appetite, etc.). Appellants also claimed damages for mental anguish, permanent impairment of all bodily functions and loss of consortium. Appellants pled the foregoing suit in strict liability based on the theory the parrot constituted an unreasonably dangerous and defective product.

On March 13, 1989, the Circuit Court of the City of St. Louis granted a motion for summary judgment on behalf of respondents. On September 14, 1990, appellants dismissed their claims against General Petco and the third-party defendant Gators of Miami, Inc., pursuant to a settlement agreement. The September 14, 1990, dismissal effectively resolved all issues pertaining to all parties in the litigation and rendered the grant of summary judgment of March 13, 1989, final and appealable. Appellants now appeal the grant of summary judgment in favor of Wal–Mart and Charles Bezoni.

In their brief, appellants claim the trial judge erroneously granted summary judgment based on RSMo § 537.762 (Supp. 1988). Appellants claim the Act covers only those claims which accrued after July 1, 1987, while the instant cause of action accrued on February 24, 1987, the date James Latham allegedly contracted psittacosis.

In this assertion, appellants are undoubtedly correct. RSMo § 537.762 (1988) was not intended to apply retroactively. The

Act reads, "The provisions of sections ... 537.760 to 537.765 ... shall apply to all causes of actions [sic] accruing after July 1, 1987." However, in addition to asking the trial court to dismiss the appellants' petition pursuant to RSMo § 537.762, the respondents' motion also requested in the alternative, that the trial court grant summary judgment in their favor "as the pleadings and affidavits herein show there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law." Thus, respondents moved either for a dismissal without prejudice, for which they relied on RSMo § 537.762, or summary judgment, for which they claimed no issues of material fact were before the court.

Since the trial court granted summary judgment rather than dismiss appellants' claims, this court presumes appellants' claims survived the motion to dismiss and the trial judge found that the respondents were entitled to judgment as a matter of law. The main issue presented arises under the *Restatement (Second) of Torts*, § 402A, adopted in Missouri in 1969. *Keener v. Dayton Electric Mfg. Co.*, 445 S.W.2d 362, 364 (Mo.1969). Section 402A provides:

Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

*Restatement (Second) of Torts* § 402A. This court believes the issue presented is whether a living animal can be a "product" under the *Restatement*. This question, though a subject of some controversy in several states, is one of first impression in Missouri. We begin our analysis by reviewing the decisions reached by other courts.

■ The issue of whether an animal fits within § 402A's definition of a product first arose in *Whitmer v. Schneble*, 29 Ill. App.3d 659, 331 N.E.2d 115 (1975). In this dog-bite case, the plaintiffs alleged that the defendants were strictly liable for selling them an unreasonably dangerous product. The Illinois court disagreed, holding *inter alia*, that although a product under § 402A need not be manufactured, and may be a viable thing, its nature must be fixed when it leaves the manufacturer's or seller's control. *Whitmer*, 331 N.E.2d at 119. The court went on to cite the policy behind imposition of strict liability, namely, that the costs of injuries resulting from defective products be borne by those who market such products, rather than by the injured persons, who are powerless to protect themselves. *Id.* The court concluded that the above purpose would be defeated if strict liability were applied to products whose character could be changed and shaped by the purchaser rather than the seller. *Id.* Thus, the Illinois court held, as a matter of law, that animals could not be "products" under the *Restatement*.

Two years later, a New York court reached a different result on the same issue, this time in the guise of diseased hamsters. *Beyer v. Aquarium Supply Co.*, 94 Misc.2d 336, 404 N.Y.S.2d 778 (N.Y.Sup.Ct. 1977). Denying a motion to dismiss, the New York court noted that the reason for strict products liability is to equitably distribute the inevitable consequences of commercial enterprise and to promote the marketing of safe products. *Beyer*, 404 N.Y.S.2d at 779. Applying this policy to the facts in *Beyer*, the court found that there is no reason why a breeder, distributor or vendor who places a diseased animal in the stream of commerce should be less accountable for his actions than one who markets a defective manufactured

product. *Id.* "The risk presented to human well being by a diseased animal is as great and probably greater than that created by a defectively manufactured product." *Id.*

Thus, the court held that the diseased hamsters were products within the meaning of the *Restatement.* However, we note the New York court took no notice of the existing Illinois doctrine.

Illinois had an opportunity to reconsider its decision in *Whitmer* three years after the New York court's analysis, but stuck by its original view. In *Anderson v. Farmers Hybrid Cos., Inc.,* 87 Ill.App.3d 493, 42 Ill.Dec. 485, 408 N.E.2d 1194 (1980), the court held that diseased gilts (unbred female pigs used for breeding purposes) were not products under the *Restatement* due to their mutability. *Anderson,* 42 Ill. Dec. at 490, 408 N.E.2d at 1199. The court went on to state that living creatures, such as the swine in *Anderson,* are by their nature in a constant process of internal development and growth and they are also participants in a constant interaction with the environment around them as part of their development. Thus, living creatures have no fixed nature and cannot be products as a matter of law. *Id.* Recovery under a strict liability theory was therefore disallowed in *Anderson.*

Since Illinois's ruling in *Anderson,* only two other jurisdictions have been presented with the instant issue. In 1985, Oregon adopted the New York view and specifically rejected Illinois's analysis. *Sease v. Taylor's Pets, Inc.,* 74 Or.App. 110, 700 P.2d 1054, 1058 (1985). In that same year, the United States District Court of Colorado adopted the Illinois position. *Kaplan v. C Lazy U Ranch,* 615 F.Supp. 234, 238 (D.Colo.1985).

We tend to agree with the Illinois view, that due to their mutability and their tendency to be affected by the purchaser, animals should not be products under § 402A as a matter of law. It seems unreasonable for us to hold a seller liable for changes potentially wrought upon a "product" by the purchaser, while the item was completely outside the seller's control. Also we question that § 402A was intended to apply as broadly as appellants argue.

A number of additional factors make summary judgment possible for respondents. For example, respondents were not in the business of selling parrots, nor were appellants their normal type of customer. Appellant Roberta Latham was an employee of the store, who asked that the parrot be *specially ordered* as a *special favor.* In addition, facts agreed to by both parties disclose that the bird was in Wal–Mart's possession for only a short time (less than one hour). We also note appellants' affidavit appears insufficient for purposes of summary judgment. To state a cause of action according to Restatement § 402A, the appellant must establish:

(1) Defendant sold the product in the course of its business; (2) the product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; (4) plaintiff was damaged as a direct result of such defective condition as existed when the product was sold.

*Fahy v. Dresser Indus., Inc.,* 740 S.W.2d 635, 637–38 (Mo. banc 1987).

Respondents have asserted in their affidavit that neither Wal–Mart nor Charles Bezoni sell parrots to the general public in the ordinary course of business. This assertion is uncontradicted by appellants in their affidavit. This fact is therefore admitted for purposes of summary judgment. *Dietrich v. Pulitzer Publishing Co.,* 422 S.W.2d 330, 333 (Mo.1968); Rule 74.04(e). Thus, due to the insufficiency of their affidavit, appellants have failed to show genuine issues of material fact exist regarding all four criteria as required in *Fahy,* 740 S.W.2d at 637–38 and Restatement § 402A.

For all the above reasons, we affirm the trial court's grant of summary judgment in favor of respondents, Wal–Mart, Inc. and Charles Bezoni.

CRIST and AHRENS, JJ., concur.