2001 SD 2

**Thomas O. MILLIGAN, Plaintiff and Appellant,**

v.

**Roger T. WALDO, d/b/a Waldo Realty, L–7 Ranch Company a/k/a The L–7 Ranch Co., Inc., A South Dakota Corporation, Barry Dunn, Roger Dunn, Robert Lamoureaux, Gregg L. Dunn, Defendants and Appellees,**

**and**

**Carol Dunn Cade, Defendant.**

**No. 21369.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 25, 2000.

Decided Jan. 3, 2001.

Thomas M. Issenhuth and William H. Dietrich of Arneson, Issenhuth & Gienapp, Madison, SD, Attorneys for plaintiff and appellant.

Lonnie R. Braun and Gregory J. Bernard of Morrill, Thomas, Nooney & Braun, Rapid City, SD, Attorneys for defendant and appellee Waldo.

Clint L. Sargent and Mark V. Meierhenry of Danforth, Meierhenry & Meierhenry, Sioux Falls, SD, Donald E. Covey, Winner, SD, Attorneys for defendants and appellees L–7 Ranch, Barry Dunn, Roger Dunn, Gregg Dunn and Roger Lamoureaux.

AMUNDSON, Justice

[¶ 1.] Thomas Milligan appeals the trial court's grant of summary judgment in favor of Roger Waldo, L–7 Ranch Company, Barry Dunn, Roger Dunn, Robert Lam- oureaux, Gregg Dunn, and Carol Dunn Cade (Ranch). We affirm.

## FACTS

[¶ 2.] This case arises out of the sale and purchase of a ranch located in Todd County, South Dakota known as "L–7 Ranch." The L–7 comprised approximately 14,000 acres, of which, some 7,089 acres were owned in fee simple. Close to 2,909 acres were held in trust, to which title was held by the Bureau of Indian Affairs of the Interior Department of the United States. The remaining 4,000 acres were leasehold interests.

[¶ 3.] In the summer of 1995, the shareholders of L–7 Co. Inc. decided to sell the ranch. Barry Dunn, acting as president of the L–7 Co. Inc., contacted Roger Waldo for the purpose of listing the property for sale. Waldo agreed to act as the exclusive agent of L–7 Co. Inc., and listed the property for sale.

[¶ 4.] In December of 1996, Thomas Milligan contacted Waldo in response to an advertisement flier listing the L–7 ranch for sale. Through Waldo, negotiations between Milligan and Dunn resulted in the sale of approximately 10,000 acres of the L–7 ranch for the price of roughly $2,000,-000. Per the purchase agreement, 7,089 acres were to be deeded upon closing, which L–7 Co. Inc. owned in fee simple. Another 2,909 acres were to be deeded upon the issuance of patents by the Department of Interior covering the trust land. The purchase agreement, at the request of Milligan's lender, included an escrow agreement. The escrow agreement expressly stated that the "Trust Deed Land proceeds [are] to be escrowed until patents are received."

[¶ 5.] The closing date on the purchase agreement was set for March 5, 1996. In advance of the closing date, Milligan received a draft copy of the escrow agreement. He also later received a revised copy of the escrow agreement, which now provided in relevant part:

(7) PROCEDURE IN THE EVENT OF FAILURE OF PATENTS: In the event that the title to the real estate described in the escrowed deeds is not insurable or that the trust patents are not issued by September 1, 1996, then and in the event, the escrow shall close, and the respective interests shall be adjusted as follows:

(A) The funds in escrow shall be withdrawn from deposit with the principal of the escrowed funds returned to the Buyer in full ...

Upon recognizing the change in the escrow agreement, Milligan left the closing to inspect the revised escrow agreement. More than an hour later, Milligan returned and signed the revised escrow agreement without objection.

[¶ 6.] In May of 1996, the BIA issued a decision denying the application for patents on the trust land. Although the decision was appealed, a final determination was made on September 6, 1996 that the patents would be denied. Without the patents, L-7 Co. Inc. could not deed the entire property to Milligan and the money held in escrow was required to be remitted to him.[1] On October 16, 1996, pursuant to the terms of the escrow agreement, the escrow was closed and Milligan received his money.

[¶ 7.] Milligan filed suit in the summer of 1998. On November 22, 1999, the trial court granted summary judgment in favor of Ranch on the claims alleging breach of contract, fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation. Milligan appeals raising the following issue:

Whether the trial court erred in granting summary judgment in favor of Ranch in regard to the Milligan's claim of fraudulent concealment, fraudulent misrepresentation, and negligent representation.

**STANDARD OF REVIEW**

[¶ 8.] Our review of a trial court's granting of summary judgment is well settled. See *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968); *Millard v. City of Sioux Falls*, 1999 SD 18, ¶ 8, 589 N.W.2d 217, 218; *Walther v. KPKA Meadowlands Ltd. Partnership*, 1998 SD 78, ¶ 14, 581 N.W.2d 527, 531; *Specialty Mills, Inc. v. Citizens State Bank*, 1997 SD 7, ¶ 7, 558 N.W.2d 617, 620.

In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of summary judgment is proper.

*Kaiser v. North River Ins. Co.*, 2000 SD 15, ¶ 6, 605 N.W.2d 193, 195; *Schipke v. Grad*, 1997 SD 38, ¶ 5, 562 N.W.2d 109, 110; *Walz v. Fireman's Fund Ins. Co.*, 1996 SD 135, ¶ 6, 556 N.W.2d 68, 69; *Harn v. Continental Lumber Co.*, 506 N.W.2d 91, 94 (S.D.1993).

**DECISION**

[¶ 9.] **Whether the trial court erred in granting summary judgment in favor of Ranch in regard to Milligan's claim of fraudulent concealment, fraudulent misrepresentation, and negligent representation.**

[¶ 10.] The cause of action of fraudulent concealment is governed by

---

1. On October 8, 1996, Tribal Land Enterprise purchased the trust land for the same price at which Milligan offered to purchase it.

SDCL 20–10–2(3). To successfully prove fraudulent concealment, Milligan must show: (1) the suppression of a fact by one who is bound to disclose it, or (2) the suppression of a fact by one who gives information of other facts which are likely to mislead for want of communication of that fact. For misrepresentation to be actionable, Milligan must prove: (1) Ranch represented to Milligan as a fact the trust land would be deeded to Milligan, but that Ranch did not believe at the time that it would be deeded; or (2) Ranch represented to Milligan as a fact that the trust land would be deeded, but that Ranch did not have a reasonable ground for believing it to be true. *See* SDCL 20–10–2(1) and (2).

[¶ 11.] Milligan has failed to provide any evidence of fraudulent concealment or misrepresentation or negligent representation on the part of Ranch as it provided Milligan with all the information known to them concerning the issuance of the patents. Milligan was aware that patents had to issue before he was entitled to the 2,909 acres held in trust. He was aware that the signed escrow agreement provided for remittance of any monies if the patents were not issued. He was also aware that the Department of Interior, and not Ranch, had the sole authority to issue patents. Milligan must proffer *specific* facts as to Waldo's alleged cover-up. SDCL 15–6–56(c). Without specific alleged facts, Milligan has failed in his resistance to motion for summary judgment. *Hughes-Johnson v. Midland Hospital*, 86 S.D. 361, 195 N.W.2d 519, 520 (1972).

[¶ 12.] Milligan's argument that Ranch failed to diligently inquire into the patent process is without merit. Milligan had notice of the contingent nature of the patents, and if he had none, he is still charged with knowing the law. *Meyer v. Santema*, 1997 SD 21, ¶ 12, 559 N.W.2d 251, 255. The escrow agreement itself gave Milligan the first clue that there was a chance that the patents may not issue. A buyer of land must exercise due diligence in investigating contingencies placed in the contract. It is also fundamental that the buyer is bound by the consequential effect of contingencies that do not come to fruition. Milligan did not investigate the patent process, nor did he inquire into what would happen if the patents did not issue. Contrary to his position, Milligan knew that, according to the signed escrow agreement, he was to receive his money back if the patents did not issue. As we stated in *Moller v. Moller*, "we will not put trial courts in the position of relieving parties of an initial bad bargain[.]" 356 N.W.2d 909, 911–12 (S.D.1984). It is inconceivable that one could rely on another who does not control the issuance of the required patents. Under the record reviewed, we do not find any concealment or misrepresentation on the part of the defendants.[2] Lack of diligence on the part of Milligan should not in anyway be attributable to Ranch.

[¶ 13.] We have also stated that an "actionable misrepresentation must relate to a past or existing fact and not a future event." *Sperry Corp. v. Schaeffer*, 394 N.W.2d 727, 730 (S.D.1986). The closing took place on March 5, 1996. The decision made by the BIA denying the issue of patents did not occur until May of 1996, with a final judgment issuing the denial of

---

2. Milligan contends that he was not bargaining on a level playing field because he is non-Indian and most of the defendants are Indian. Milligan is a college educated experienced rancher who was attempting to acquire a $2 million parcel of land. He cannot now claim that there was unequal bargaining power to the degree that a special relationship existed. This was an "arms length" transaction, where the defendants had no fiduciary duty to protect Milligan's interests. There is absolutely no evidence that the defendants had any special knowledge concerning the patent process or that Milligan was in such an inferior bargaining position that the defendants had a duty to look out for his best interests. In any event, this argument is considered waived as it was never argued below. *State v. Spiry*, 1996 SD 14, ¶ 15, 543 N.W.2d 260, 263; *In re Sioux Valley Hosp. Ass'n*, 513 N.W.2d 562 (S.D.1994); *In re Adoption of Baade*, 462 N.W.2d 485, 488 (S.D.1990).

patents in September of 1996. It is quite clear that the denial of patents came after the closing. Meaning, the denial of patents was "a future event" for which there is no cause of action for misrepresentation. *Meyer, supra.* Thus, Milligan has no cause of action based on facts occurring after the closing.

[¶ 14.] It is important to note that Milligan was aware at the March 5, 1996, closing that patents had not yet issued, and that with full knowledge of this fact, chose to proceed with the sale of the closing of the non-trust land. In fact, Milligan insisted that the closing date remain at March 5, 1996 so he could be in possession of the ranch in time for the upcoming grazing season. His insistence on an early closing date is a risk he was willing to take. It is a general rule that "mere [ ] improvidence will not of itself be sufficient to warrant the rescission of· a contract." 12 CJS Cancellation of Instruments § 23; *see also Orr v. Allen,* 73 S.D. 547, 45 N.W.2d 737 (S.D.1951). Thus, it was his own doing that resulted in his partial demise of the sales transaction-i.e. the 2,909 acres of trust property.

[¶ 15.] Moreover, Milligan conceded through an answer to an interrogatory that "[a]t this time, Plaintiff has no direct knowledge that the Defendants knew that the patents for the trust land would not be issued by the federal government." It is clear that Milligan's reliance on Ranch was unreasonable and that he entered the purchase of the fee land at his own peril. It is not up to this Court to bail him out of a poor business decision by proceeding with the purchase agreement of the 7,089 acres of fee land without assurances from the BIA for the other 2,909 acres. According to a letter written on March 4, 1996 by Harold Compton, a realty agent for the BIA, the "process [of issuing patents] should take another 60–120 days" and that they did "not foresee any such problems at this time." Milligan received a copy of this letter prior to closing. Thus, Milligan was privy to the same information as Ranch. These facts also militate against Milligan's cause of action for misrepresentation as it shows that the defendants had a reasonable ground that the patents would issue.

[¶ 16.] Since the record shows that the closing date was at the insistence of Milligan, to assist him in the up-coming grazing season, he acted at his own peril. Such insistence certainly brought into play the risk associated with the possibility of patents not being issued and should not implicate any wrong-doing by Ranch. In essence, his insistence on the March closing reminds this Court of the old adage "haste makes waste."

[¶ 17.] Affirmed.

[¶ 18.] MILLER, Chief Justice, and SABERS, KONENKAMP, and GILBERTSON, Justices, concur.