2001 SD 88

**Ann PETTRY, Plaintiff and Appellant,**

v.

**RAPID CITY AREA SCHOOL DIS-TRICT, Linda Hanson and Gerald Kammerer, Defendants and Appellees.**

**No. 21669.**

Supreme Court of South Dakota.

Argued March 19, 2001.

Decided July 3, 2001.

However, the Salises' claim for compensation for breach of contract is not at issue in this appeal.

Michael J. Simpson of Groves, Julius & Simpson, Rapid City, SD, Attorneys for plaintiff and appellant.

Karla Engle of Tieszen Law Office, Pierre, SD, Attorneys for defendants and appellees.

MILLER, Chief Justice.

[¶ 1.] In this appeal, we hold that the circuit court erred in granting a summary judgment to the Rapid City Area School District and two of its maintenance workers (collectively referred to as "the District") on the grounds of assumption of the risk, in an action claiming negligent maintenance of a parking area at the District's Canyon Lake Elementary School. We reverse and remand.

## FACTS

[¶ 2.] Pettry's son had attended the Canyon Lake School from grades one through six. As a result, she had made numerous trips to the school over the years for reasons related to her son's education and school activities. At approximately 7:00 p.m. on the evening of January 23, 1998, Pettry traveled to the school to attend her son's basketball game. The day had been clear and very cold and, while it had not snowed that day, there was an accumulation of snow on the ground from previous storms. As Pettry approached the school, she saw that its parking lot was full and that the surrounding streets were dark, icy and snow-packed. Pettry had a knee injury from a prior automobile accident and, while the injury had healed, she remained concerned about slipping and falling and wanted to park close to the school rather than in the street. Seeing that a number of cars were already parked in the school's graveled playground area, and knowing from previous experience that people frequently parked in that area during school functions, Pettry proceeded to park in that location.

[¶ 3.] As Pettry pulled into the playground, she saw that there was also ice and snow packed on its surface, but she was able to park within a few feet of the entrance to the gym. She got out of her car and proceeded to walk on the playground's surface to a concrete area directly in front of the gym doors. As she walked, Pettry again noticed the playground was snow-packed and icy and she made a special effort to walk carefully in her flat-soled rubber shoes, watching where she was stepping. With these precautions, she was able to enter the gymnasium without incident.

[¶ 4.] After the game, Pettry left the gymnasium through the same doors she had used to enter the facility. She also followed the same path back to her car that she had taken to enter the gym. A number of other people were following a similar route. This time, however, Pettry lost her footing, slipped and fell on her back and slammed the back of her head on the ground. Several individuals assisted Pettry and accompanied her back into the gymnasium and into the ladies' room where she became sick and vomited. Another parent eventually drove her home and she continued to vomit throughout the night. Pettry has continued to experience various incidents of pain and discomfort since her fall and has frequently experienced severe headaches that have interfered with her ability to function in her employment.

[¶ 5.] Pettry commenced this negligence action against the District. The circuit court granted the District's motion for summary judgment grounded on a claim of Pettry's assumption of the risk of falling in the playground. She appeals.

## ISSUE
[¶ 6.] **Did the circuit court err in granting the District summary judgment?**

[¶ 7.] Because the circuit court determined, as a matter of law, that Pettry assumed the risk of falling in the playground, our standard of review is clear.

> In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the· trial court, affirmance of summary judgment is proper.

*Milligan v. Waldo*, 2001 SD 2, ¶ 8, 620 N.W.2d 377, 379 (quoting *Kaiser v. North River Ins. Co.*, 2000 SD 15, ¶ 6, 605 N.W.2d 193, 195).

> This Court has repeatedly stated that "[q]uestions of negligence, contributory negligence and assumption of the risk are for the jury in all but the rarest of cases so long as there is evidence to support the issues." "It is only when reasonable men can draw but one conclusion from facts and inferences that they become a matter of law and this rarely occurs."

*Pierce v. City of Belle Fourche*, 2001 SD 41, ¶ 22, 624 N.W.2d 353, 356–57 (citations omitted).

[¶ 8.] The three prong test for assumption of the risk was summarized in *Mack v. Kranz Farms, Inc.*, 1996 SD 63, ¶ 9, 548 N.W.2d 812, 814:

> A defendant must show the plaintiff: (1) had actual or constructive knowledge of the risk; (2) had an appreciation of its character; and (3) voluntarily accepted the risk, having had the time, knowledge, and experience to make an intelligent choice. Assumption of the risk is an affirmative defense and failure to establish any one of the above three criteria is fatal. (citations omitted).

Here, we focus our inquiry on the third prong of the test: *i.e.*, did Pettry voluntarily accept the risk, having had the time, knowledge, and experience to make an intelligent choice?

[¶ 9.] Whether a plaintiff has voluntarily accepted a risk largely depends on the existence of a "reasonable alternative course of conduct" open to the plaintiff to avert harm to himself. *See Mack*, 1996 SD 63 at ¶ 15, 548 N.W.2d at 815. *See also Goepfert v. Filler*, 1997 SD 56, ¶ 12, 563 N.W.2d 140, 144 (acceptance of risk necessarily connotes attention to reasonable alternatives). This standard is derived from Restatement of Law (Second) Torts, § 496E, p. 576 (1965) which provides in full:

> (1) A plaintiff does not assume a risk of harm unless he voluntarily accepts the risk.
>
> (2) *The plaintiff's acceptance of a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to*
>
> > (a) *avert harm to himself* or another, or
> >
> > (b) exercise or protect a right or privilege of which the defendant has no right to deprive him. (emphasis added).

[¶ 10.] The record provides conflicting arguments as to whether Pettry had a reasonable alternative available to her in making her way into the school gymnasium. The District implies she

could have parked in the street and safely walked a block to the school and that, instead, because it was more convenient and closer to the gymnasium, she chose to park in the riskier playground area. That, however, is not a fair characterization of Pettry's testimony. On the very pages of her deposition referenced in the District's brief, she testified as follows:

Q Now, you said that the parking lot was full and you didn't want to park in the street *because it was icy.*

A *Right.* And it was pretty crowded. I would have had to walk quite a—a considerable distance if I would have parked in the street. I would have probably had to walk a block or more.

Q *You said the street was icy.*

A *Right.*

Q Tell me about that.

A *It was just icy, snowpacked.*

Q Snowpacked and icy on the entire road surface?

A I don't remember specifically. I would say patches.

Q So *there were patches of snow and ice?*

A *Right.*

Q And you saw the patches of snow and ice as you were driving up to Canyon Lake?

A Right.

Q And that gave you concern about whether [or] not you might slip and fall?

A Yes. *Plus it was dark.*

Q It was dark but you could still see these patches of snow and ice?

A Well, there were street lights, my headlights, and I generally don't like to walk very far in unknown conditions.

\* \* \*

Q So you knew that when you drove into the playground area?

A Yes.

Q Seeing that it was snowpacked and icy, why did you park there?

A Because it was closer.

Q Because it was closer to the gym?

A Right. It was closer to any location I could have parked, closer to the gym.

Q And so—that's where you were headed, was the gym?

A Yes.

Q So rather than parking on the street you chose to park on the playground because it was closer to the gym?

A Yes.

Q Were there any parts of the playground that were less snowpacked than others?

A I didn't notice. It was dark. I couldn't really see.

Q Could you tell whether the playground had been plowed at all?

A I didn't notice.

Q So you don't know one way or the other?

A I don't know. (emphasis added).

[¶ 11.] This testimony, viewed in a light most favorable to Pettry, indicates that the alternatives confronting her on the night of her fall were to park in the dark, icy street and walk a block or more to the gymnasium or to park in the dark, icy playground and walk only a few steps to the gymnasium. If these were the alternatives, her choice of the shorter course was, arguably, the more reasonable selection. Given the conflicting arguments, and evidence as to whether Pettry had a reasonable alternative available to her, we hold that the issue of whether she voluntarily accepted the risk in this case presented a jury question. *See Mack, supra.*

[¶ 12.] Reversed and remanded.

[¶ 13.]  AMUNDSON, KONENKAMP and GILBERTSON, Justices, and SEVERSON, Circuit Judge, concur.

[¶ 14.]  SEVERSON, Circuit Judge, for SABERS, Justice, disqualified.