*2002 SD 19*

**Sharon BLAHA, As Guardian Ad Litem for the Person and Estate of Jessica Blaha, a minor, Plaintiff and Appellant,**

v.

**Gary STUARD and Anna Stuard, Defendants and Appellees.**

**No. 21758.**

Supreme Court of South Dakota.

Considered on Briefs Aug. 28, 2001.

Decided Feb. 6, 2002.

Timothy L. James of James & Associates, Yankton, South Dakota, Attorneys for plaintiff and appellant.

Jack Theeler of Morgan, Theeler, Wheeler, Cogley & Petersen, Mitchell, South Dakota, Attorneys for defendant and appellee.

TIMM, Circuit Judge

[¶ 1.] This is an appeal from an order granting Stuards' motion for summary judgment. We affirm.

## FACTS

[¶ 2.] On December 17, 1998 Chad and Dustin Blaha traveled to Gary and Anna Stuard's home to inquire about a labrador dog advertised in the Rapid City Journal. The advertisement stated:

> Beautiful male Yellow Labrador, good Retriever, 5 years old, $50 with AKC papers and pedigree or free without. Call.

[¶ 3.] At the Stuard home, Gary showed Chad and Dustin the dog's retrieving skills and they discussed what Chad planned to do with the dog. Chad told Gary that he wanted the dog for a Christmas gift for his father and that the dog would be used for hunting.

[¶ 4.] The Blahas and Stuards discussed the characteristics of the dog and the type of environment the dog would be in under the Blaha's care. Both Chad and Dustin Blaha stated that the Stuards told them the dog had jumped up on one of their children a long time ago and that the dog was protective of the porch area of the home.

[¶ 5.] At the end of the meeting, Chad purchased the dog from the Stuards for $50 and received the AKC papers. He and Dustin took the dog back to Rapid City before heading home to Wagner. During the time the dog was in Rapid City, the dog growled at Chad and Dustin's ten- to twelve-year-old cousin.

[¶ 6.] While in Wagner, the dog was around the Blaha family and behaved very well. The dog had not exhibited any bad behavior prior to December 26 when it bit Jessica Blaha, Chad's sister and the daughter of the dog's ultimate owner. A personal injury lawsuit against the Stuards followed, alleging negligence, breach of warranties, negligent infliction of emotional distress, and strict liability.

[¶ 7.] Gary and Anna Stuard moved for summary judgment, which was granted by the trial court. Sharon Blaha, as Guardian Ad Litem for the Person and Estate of Jessica Blaha, appeals the trial court's order.

## STANDARD OF REVIEW

[¶ 8.] The standard of review for summary judgment is well established:

> In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis, which supports the ruling of the trial court, affirmance of summary judgment is proper.

*Pettry v. Rapid City Area School Dist.*, 2001 SD 88, ¶ 7, 630 N.W.2d 705, 708 (quoting *Milligan v. Waldo*, 2001 SD 2, ¶ 8, 620 N.W.2d 377, 379). The party opposing summary judgment "may not rest on the mere allegations ... in his pleading. He must present evidentiary matter showing that there is a genuine issue of material fact that is worth bringing to trial." *Peterson v. Spink Elec. Co-op., Inc.*, 1998 SD 60, ¶ 10 n. 3, 578 N.W.2d 589, 591 n. 3.

## ANALYSIS AND DECISION

[¶ 9.] It is common knowledge that horses buck, cattle roam, cats stray and dogs bite. It seems that when man and other animals interact, it is usually man that gets the short end of the stick. Perhaps the Illinois Appellate Court in *Whitmer v. Schneble*, 29 Ill.App.3d 659, 331 N.E.2d 115, 118 (1975), said it most precisely when it quoted Isaac Watts in his *Divine Songs* in a similar case:

> 'Let dogs delight to bark and bite
> For God hath made them so;
> Let bears and lions growl and fight
> For 'tis their nature too.'

Or, as remarked by John B. Bogart and quoted by Frank O'Brien in the *Story of the Sun:* "when a dog bites a man, that is not news because it happens so often. But if a man bites a dog, that is news."

[¶ 10.] In order to conduct the proper analysis, the legal relationship between these parties must be clear. Jessica is the daughter of the dog's ultimate owner. Jessica's father is the dog's owner. *See* SDCL 43–2–1. The dog was given to Jessica's father from the buyer of the dog, Chad Blaha. *See* SDCL 57A–2–103(a). The Stuards were the sellers of the dog. *See* SDCL 57A–2–103(d).

[¶ 11.] Finally, dogs are "goods" and not "products." Courts that have considered this issue align themselves in two different positions either with the position of the New York courts, holding animals are products, or the Illinois courts, holding animals are goods. We adopt the holding of the courts of Illinois, Colorado, and Missouri which have all held that animals cannot be "products" under the Restatement of Torts.

[¶ 12.] The New York Supreme Court in *Beyer v. Aquarium Supply Co.*, 94 Misc.2d 336, 404 N.Y.S.2d 778 (Sup.Ct. 1977) held that a diseased hamster was a product within the meaning of the Restatement. The court stated that "there is no reason why a breeder, distributor or ven-

dor who places a diseased animal in the stream of commerce should be less accountable for his actions than one who markets a defective manufactured product." *Id.* at 779. Connecticut and Oregon also follow the position that animals should be considered "products" under the Restatement. *See Worrell v. Sachs*, 41 Conn. Supp. 179, 563 A.2d 1387 (1989); *Sease v. Taylor's Pets, Inc.*, 74 Or.App. 110, 700 P.2d 1054 (1985).

[¶ 13.] This Court adopts the Illinois position, which provides that:

> living creatures ... are by their nature in a constant process of internal development and growth and they are also participants in a constant interaction with the environment around them as part of their development. Thus, living creatures have no fixed nature and cannot be products as a matter of law.

*Latham v. Wal–Mart Stores, Inc.*, 818 S.W.2d 673, 676 (Mo.App.Ct.1991) (*citing Anderson v. Farmers Hybrid Cos., Inc.*, 87 Ill.App.3d 493, 42 Ill.Dec. 485, 408 N.E.2d 1194 (1980)).

[¶ 14.] Under South Dakota law, a cause of action by someone injured by a domestic animal can arise under a theory of strict liability or negligence. *Sybesma v. Sybesma*, 534 N.W.2d 355, 357 (S.D. 1995). We address the theory of strict liability first.

[¶ 15.] Blaha argues that the trial court erred when it failed to hold Stuards liable under a theory of strict liability. All parties classified as such, we hold, as the courts in *Latham* and *Anderson* held, that recovery under a strict liability theory is disallowed. South Dakota adopted the rule of strict liability in tort as expressed in Restatement (Second) Torts § 402A (1965) in *Engberg v. Ford Motor Co.*, 87 S.D. 196, 205, 205 N.W.2d 104, 109 (1973). *Peterson v. Safway Steel Scaffolds Co.*, 400 N.W.2d 909 (S.D.1987). This rule states that "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer...." *Engberg*, 205 N.W.2d at 109. However, these are product liability cases and because the dog in this case is not a "product," according to the Restatement, no liability exists under a theory of strict liability.

[¶ 16.] The negligence and negligent infliction of emotional distress claims also fail. According to this Court's opinion in *Sybesma*:

> Liability in negligence for domestic animals is found in § 518 of the Restatement (Second). It provides:
>
> > Except for animal trespass, one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal, if, but only if ...
> >
> > (b) he is negligent in failing to prevent the harm.

*Sybesma*, 534 N.W.2d at 357–58 (quoting Restatement (Second) of Torts § 518).

[¶ 17.] Blaha failed to allege facts sufficient to support the contention that this was an abnormally dangerous animal. The facts, viewed in light of the non-moving party, indicate that the dog showed none of the signs this Court has recognized as being sufficient to establish dangerous propensities, absent an actual attack. There is no evidence in the record to indicate that the dog "constantly barked, bared its teeth, and strained at its leash." *Gehrts v. Batteen*, 2001 SD 10, ¶ 8, 620 N.W.2d 775, 778.

[¶ 18.] This theory holds the possessor liable if he is negligent in failing to prevent the harm. In order to establish

liability under this Restatement section, this Court would have to put the seller in the shoes of the possessor of the dog. Blaha has cited nothing and this Court has found nothing to support the contention that possessor's liability may be superimposed upon a seller. Blaha's claim must fail under this theory because the dog was not "possessed," as required by the language in the Restatement, by the Stuards.

[¶ 19.] This Court next addresses the issue of liability under a theory of negligent infliction of emotional distress. The first element in a claim for this cause of action is that the defendant engaged in the negligent conduct. SD Pattern Jury Instr. (Civil) 145–09. "Negligence is the breach of a legal duty imposed by statute or common law." *Stevens v. Wood Sawmill, Inc.*, 426 N.W.2d 13, 14 (S.D.1988) (citing *Walz v. City of Hudson*, 327 N.W.2d 120, 122 (S.D.1982)). "The three necessary elements of actionable negligence are: (1) A duty on the part of the defendant; (2) a failure to perform that duty; and (3) an injury to the plaintiff resulting from such a failure." *Id.*

[¶ 20.] A seller has the duty to provide correct information. *Anderson v. Heck*, 554 So.2d 695, 705 (La.App.Ct. 1989). According to the depositions of Chad and Dustin Blaha, the Stuards relayed to them their experience with the dog. Accordingly, they fulfilled their duties as sellers. Thus, there was no breach of the duty owed and an action for negligent infliction of emotional distress may not be maintained.

[¶ 21.] Blaha next contends that the trial court erred in ruling that the Stuards did not breach the express and implied warranties. SDCL 57A–2–318 provides that:

[a] seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section.

[¶ 22.] It is disputed whether there was an express warranty made by the Stuards that this dog was good around family or people. An express warranty can be created when given in response to a specific question or when given in the context of a specific averment of fact. *Schmaltz v. Nissen*, 431 N.W.2d 657, 661 (S.D.1988).

[¶ 23.] Our standard of review for summary judgments requires that we view the facts most favorable to the nonmoving party. *Pettry*, 2001 SD 88, ¶ 7, 630 N.W.2d at 708. According to Chad Blaha, the purchaser of the dog, he responded to the ad in the Rapid City paper advertising a "Beautiful male Yellow Labrador, good Retriever, 5 years old, $50 with AKC papers and pedigree or free without. Call." Before meeting with the Stuards, Chad's main concern was if the dog was really a good retriever. When Chad met personally with the Stuards, the dog's retrieving skills were demonstrated. Chad also asked if the dog was good around people. Chad stated that Mrs. Stuard explained to him that the dog jumped up on one of their children a long time ago. Furthermore, Dustin Blaha stated that the dog was purchased as a Christmas gift for their father as a hunting dog. Dustin also stated that he recalled Mr. Stuard saying that the dog was protective of the porch area of the house. Dustin also explained that the dog was purchased because he was a very well trained dog. Furthermore, the ad in the newspaper stated that this dog was a good retriever. The facts indicate that nothing was ever stated that this was a dog that was good around people in general or family more specifically. When asked about

the disposition of the dog, the Stuards relayed their experiences to Chad and Dustin.

[¶ 24.] The only warranty, express or implied, that results from these facts is that the dog was, at the time, a good retriever. We thus find that there was no warranty concerning the dog's disposition around people. The Stuards were forthright concerning their dealings with the dog. This Court looks to the language of the *Whitmer, supra,* court to further explain the rationale of this finding. In that factually similar case, the Illinois Appellate court stated that:

> even if there were an express warranty, it would not appear that there was a breach. Nowhere do the Schnebles allege that Hoyt stated that the dog would not bite. Even a docile dog is known and expected to bite under certain circumstances. (*See* Restatement of Torts, § 518, comment g and Restatement of Torts (Second), § 290, comment g.) And this court will not infer a warranty that the dog will never bite from the language which was used. '(T)he law will not lend itself to the creation of an implied warranty which patently runs counter to the experience of mankind or known forces of nature. It will not read into any sale or bailment a condition or proviso which is unreasonable, impossible or absurd.' *Meester v. Roose* (1966), 259 Iowa 357, 144 N.W.2d 274, 276.

*Whitmer,* 331 N.E.2d at 118.

[¶ 25.] In addition, the statements complained of only describe the personality of the dog *at the time it was sold.* There is no warranty by the seller that the dog's personality will not change in the future. *Id.*

[¶ 26.] Blaha has not alleged that the Stuards warranted that this dog would not bite. One simply cannot warrant that "this dog will *never* bite." As we have noted previously in this opinion, animals are exposed to an ever-changing environment and may also change, themselves, accordingly. *Latham,* 818 S.W.2d at 676.

[¶ 27.] The Stuards were forthright with the Blahas. This was an unfortunate incident, however, this Court finds that the Stuards are not liable to Blaha under any of the legal theories alleged. The record supports the order granting summary judgment and we affirm.

[¶ 28.] AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur. MILLER, Retired Chief Justice, was a member of the Court at the time this action was submitted, but was disqualified and did not participate.

[¶ 29.] SABERS, Acting Chief Justice, concurs in result.

[¶ 30.] TIMM, Circuit Judge, for MILLER, Retired Chief Justice, disqualified.

SABERS, Acting Chief Justice (concurring in result).

[¶ 31.] I concur in result, but write specially to point out that liability should attach to an owner (or former owner) of a dangerous animal if he is negligent in failing to prevent the harm. SDCL 20–9–1 provides:

> Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill, subject in the latter cases to the defense of contributory negligence.

[¶ 32.] In addition, since no dog could *constantly* bark, bare its teeth and strain at its leash, I would replace the ill-chosen word "constantly" in the cite from *Gehrts,* 2001 SD 10 at ¶ 8, 620 N.W.2d at 778, with

the word "frequently." *See* ¶ 17 of the majority opinion.